*463 MEMORANDUM BY THE COURT.
Different views were expressed by the Philadelphia District Claims Board and the War Department Claims Board, to which plaintiff appealed, and the Comptroller General, to whom the question was submitted, as to whether the contract provisions relative to saving the contractor harmless in the event of a termination of the contract by the Government would justify allowances to the contractor for material on hand or commitments for powder boxes made prior to the date of the contract and the order issued prior to the formal execution of the contract.
Before the War Claims Board passed upon this question, and therefore before it was considered by the Comptroller General, it appears that a large amount — indeed, much the larger amount — of the articles in value involved in this claim were taken possession of or received by a Government salvage board, were sold at public auction, and the proceeds of such sale, amounting to more than $300,000, were covered into the United States Treasury. This fact was evidently not known to the said board or to the Comptroller General, and we think, especially in view of the further fact that the Government’s counsel makes practically no attempt to defend against these items, that for these items the plaintiff should recover. We reach this conclusion because there is nothing in the facts found to impugn the good faith or the authority of the salvage board, and the outstanding fact is that the Government received and disposed of the property.
This consideration renders unnecessary a discussion of the question, elaborately considered by the claims board and the *464 Comptroller General, as to the meaning of the contract provisions further than to say that in our opinion the declared “purpose and intent” of the provisions in question, as expressed in the contract itself, was to save the contractor harmless from all loss resulting from termination of the contract, and that a liberal view should be taken of these provisions. It is, of course, to be understood that the expenditures for which reimbursement can be made must be such as are fairly and properly apportionable to the unfulfilled portion of the contract. The mere fact that the contractor had property on hand long before the contract was made is not alone sufficient to show that such property, or part of it, is fairly and properly apportionable to the contract.
As to the item for rough lumber, the court makes no allowance. It required at least six months to prepare the lumber for use, and therefore, this lumber was not manufactured for use under this contract. It was a portion of a larger quantity (over 11,000,000 feet) of rough lumber on hand. After the termination of the contract the plaintiff made up its claim, took account of the shooks on hand in complete sets and parts of sets, and also of those ordered from others called commitments. The aggregate of these deducted from the total requirement of 500,000 boxes determined the balance necessary to be made and also fixed the basis for determining the requisite amount of rough lumber to make this balance. The first claim of this item of rough lumber was approximately $201,000, and owing to an error in computation this was corrected to $210,822.84. This figure allows a stated number of feet of rough lumber to each complete set of shooks at $33.36+ per thousand board feet. The claims board found that the price should be $31.05, which reduced the amount to $189,327.90, and for this amount plaintiff seeks to charge the Government. It allows, however, a credit for $115,852.89 on account of what is called salvage value of this same lumber. Plaintiff used in its business during 1919 in excess of 15,000,000 feet of rough lumber and presumably used as part of that quantity 6,000,-000 feet. At what price it used the lumber does not appear.
*465 The Government being thus charged over $189,000 for rough lumber and credited with about $115,000 as the value of the same lumber, which was in plaintiff’s possession and never under the Government’s control, the question is whether the latter should be required to pay the difference of about $74,000.
As already stated, the lumber constituted a part of a larger quantity which the contractor had on hand. The contract provides that upon payment for materials on hand or in process of manufacture the same “ shall become the property of the United States.” This clearly implies that the particular property should have been sufficiently identified. It would be difficult to know what part of the lumber in the condition it was in belonged to the United States.
It does not appear just when the property was used by the contractor, nor the date at which it was taken over and credit given at a salvage value. The action of the War Claims Board and the Secretary of War’s action were not until the latter part of 1920. More than a year preceding this action the claim had been credited. with the salvage value stated. Thus, treating the lumber as its own and using it, the contractor was in no position to have delivered it to the Government when the latter accepted the figures by the War Claims Board, assuming that the board’s action be looked to in ascertaining the values of the property for which the defendant should pay. The so-called settlement contract was never effective. Its provisions were before the auditor at the instance of the Secretary of War, and before the Comptroller General at the instance and appeal of the contractor. The Secretary’s letter transmitting the question to the auditor explains the situation, and both parties acquiesced in that method of presenting the questions. The method of ascertaining the quantity of lumber in the rough has been stated — its value at the lesser figure stated was approximately $189,000. The supposed salvage value was about $115,000. The lumber was treated by the contractor as its own and was probably actually used prior to the War Claims Board’s action. There may have been book entries, but the lumber itself never left plaintiff’s possession and con *466 trol, except as it used tlie same. It can not be positively said that the contractor suffered a loss.
Some other small items have been disallowed, and judgment is rendered for the property taken and sold by the salvage board, in the sum of $651,169.32.